**Larry ENLOW, Ancillary Administrator for the Estate of Judith Enlow Plaintiff**

v.

**ST. JUDE MEDICAL, INC. Defendant**

**No. CIV.A. 3:00CV666S.**

United States District Court,
W.D. Kentucky,
At Louisville.

March 17, 2003.

Frederick D. Hatmaker, Gary Robert Hillerich, Louisville, KY, Irwin M. Ellerin, Ellerin & Associates, Atlanta, GA, for Plaintiff.

Arthur S. Beeman, Charles M. Pritchett, Jr., Lori Elizabeth Hammond, Thomas Patrick O'Brien, III, W. Bruce Baird, Frost Brown Todd LLC, Louisville, KY, for Defendant.

## MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the court on motion of the defendant, St. Jude Medical,

Inc., for summary judgment on the remaining claim in this product liability action. The action arose from the death of Judith Enlow after open heart surgery during which a mechanical heart valve, manufactured and sold by St. Jude, was implanted in her heart. Larry Enlow, as ancillary administrator for the estate of Judith Enlow, filed this action against St. Jude alleging strict liability, negligence, breach of warranty, and failure to warn in connection with the manufacture and sale of the mechanical heart valve.

In a prior opinion, this court granted partial summary judgment in favor of St. Jude on Enlow's claims of design defect, negligent design, failure to warn, and breach of express and implied warranties, dismissing these claims on the ground that they were preempted by the Medical Device Amendments of 1976, 21 U.S.C. § 360c, *et seq.* ("MDA"). The court also granted summary judgment as to the claims of negligent manufacturing, testing or inspection, and manufacturing defect to the extent that they alleged that St. Jude was negligent or the mechanical heart valve was defective despite adherence to FDA approved design and manufacturing processes and specifications. Memorandum Opinion of October 18, 2001 (DN 33).

The only claim remaining is that St. Jude failed to adhere to FDA approved design or manufacturing processes or specifications, and in so doing, manufactured a defective valve.

On June 6, 2002, Enlow responded to St. Jude's first set of interrogatories. The plaintiff was asked:

*Interrogatory No. 8:* State in detail all FDA regulations and specifications that you claim St. Jude Medical did not adhere to during the design, manufacture,

testing or inspection process for the mechanical heart valve.

Enlow responded:

*Answer:* As the court has precluded all claims the Defendant was negligent or the mechanical heart valve was defective despite adherence to FDA approved design and manufacture [sic] process and specifications, Plaintiff does not allege the breach of any FDA regulations or specifications contributed to Defendant's negligence.

Enlow has not retained an expert concerning St. Jude's manufacturing, testing, or inspection process, and has not identified a defect in the valve. After receiving the interrogatory answers, and after the close of discovery, St. Jude moved for summary judgment as to this remaining claim.

■ On summary judgment, the disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). We determined that claims of negligent manufacture despite adherence to FDA guidelines were preempted. Thus, in order to state a viable claim, Enlow must necessarily show that St. Jude did not adhere to such guidelines in this instance. Enlow has admitted in its interrogatory answers that he is not taking such a position, and he has not pursued, much less offered for the record, evidence that St. Jude failed to manufacture, test or inspect the valve in any manner other than that which was prescribed by the FDA.

■ In response to St. Jude's seemingly well-grounded motion for summary judgment, Enlow has stated that no expert testimony will be produced nor is required,

as he is relying upon the doctrine of *res ipsa loquitur* to prove his case. He contends that he "does not allege the violation of any *particular* FDA process or regulation," Responsive Brief, pg. 5 (emphasis in original), and that

> res ipsa loquitor [sic], together with the sources [operating and cardiology reports, nurses' notes, a demand attestation statement, St. Jude's investigation report, and the deposition of the surgeon, Dr. A. David Slater] listed in the supplement to interrogatories and as described below, establish a viable claim for defect with the mechanical heart valve. Had St. Jude Medical scrupulously adhered to FDA specific requirements in their entirety, the valve placed in Mrs. Enlow would likely not have malfunctioned.

*Id.* The court finds that this theory does not survive rigorous scrutiny.

 The evidence which must be proved in order to establish negligence through application of the doctrine of *res ipsa loquitur* is that

> 1) the defendant must have had full management and control of the instrumentality which caused the injury;
>
> 2) the circumstances are such that, according to common knowledge and the experience of mankind, the accident could not have happened if those having control and management had not been negligent, and
>
> 3) the plaintiff's injury must have resulted from the instrumentality.

*Cox v. Wilson,* 267 S.W.2d 83, 84 (Ky. 1954). The court in *Cox* went on to state that

> [t]he fact that some mystery accompanies an accident does not justify the application of the doctrine of *res ipsa loquitur.* The fact that we cannot pinpoint an act of omission or commission wherein one fails to respect the rights of others does not summon its use. A lack of knowledge as to the cause of the accident does not call for the application of the doctrine. The separate circumstances of each case must be considered and from them it must be first decided whether according to common knowledge and experience of mankind, this accident could not have happened if there had not been negligence.

*Id.*

It cannot be established that Ms. Enlow's death resulted from a defect in the heart valve.

> Although the jury may draw reasonable inferences from the evidence of a defect in manufacturing, it is incumbent on the plaintiff to introduce evidence that will support a reasonable inference that the defect was the 'probable' cause of the [injury] as distinguished from a 'possible' cause among other possibilities; otherwise the jury verdict is based upon speculation or surmise...There must be sufficient proof to tilt the balance from possibility to probability...Thus, defendants invariably receive a judgment in their as a matter of law in Kentucky where plaintiffs are unable to isolate one cause, either by direct evidence, or, more relevant to the present case, by eliminating other possible causes.

*Gray v. General Motors Corp.,* 133 F.Supp.2d 530, 534 (E.D.Ky.2001), (*quoting, Midwestern V.W. Corp. v. Ringley,* 503 S.W.2d 745 (Ky.1973); *Beverly Hills Fire Litigation,* 695 F.2d 207, 219 (6th Cir.1982)). The failure to exclude any of the factors which made this procedure a "high risk surgery," in the opinion of Dr. Slater, renders Enlow's causation theory a possibility rather than a probability. Further, the deposition testimony of Dr. Slater clearly negates Enlow's supposition that a defect in the valve existed.

"Malfunction" and "defect" are not synonymous terms. Dr. Slater's testimony

clearly bears this out. Slater testified that "I think the St. Jude valve is still the most commonly-used mechanical valve in the world. It was my valve of choice at that time in the mitral position. It's still my valve of choice. I have no reason to believe that there was anything wrong with the valve when it came off the shelf." Slater depo., Vol. II, pg. 80–81. He stated that he did not believe that a defect existed, and explained that "there was something dynamic in the way the valve was interacting with the motion of the heart that might be catching the leaflet." Slater depo., vol I, pg. 32–33. He stated that "...the valve was not moving as it should have..." and that he "believe[d] that there was thrombus interfering with the valve, and that did cause a malfunction of the valve." Slater depo. Vol. I, pg. 30. He observed a thrombus in the hinge point of the valve after he removed it. Slater depo., Vol. I, pg. 26. In the opinion of Dr. Slater, the surgeon operating with this valve, its "malfunction," or "sticking," or failure to function in the anticipated fashion did not establish that the valve itself was defective.

Dr. Slater further testified that "[t]his was a very ill, very damaged heart, a very serious problem, a very high-risk surgery." Slater depo., Vol. 2, pg. 69. The death certificate listed the cause of death as "congestive heart failure, coronary artery disease, and mitral insufficiency." The demand attestation statement contained six secondary diagnoses, among them mitral valve disorder, malfunction of the prosthetic heart valve, and thrombus/embolism. Slater was asked about the cause of Ms. Enlow's death, and testified that he could not say that the malfunction of the valve caused her death:

Q: Is it your opinion to a reasonable degree of medical probability that Mrs. Enlow's death was a result of the improper working of the St. Jude heart valve that you implanted in her on December 14, 1999?

A: No...I don't. I don't believe that.

Q: And what was the cause of her death?

A: The cause of her death was heart failure. I think if you look at the death certificate, the cause of death is—I don't know if you have it, but it's coronary artery disease and—it should be in here...I believe that accurately reflects her cause of death.

Slater depo., Vol I, pg. 33–34. Dr. Slater stated that after the mechanical valve was removed and the porcine valve implanted, Ms. Enlow's condition deteriorated because "she had previous myocardial infarction, and she had severe left ventricular dysfunction. She had a major operation, and I think the combination of those things further decreased her cardiac function to the point that she did not survive." Slater depo., Vol. II, pg. 83. Thus, Dr. Slater testified that he did not believe that the valve that he implanted was defective, and further that its malfunction during the surgery was not the cause of death. Aside from Dr. Slater's testimony, the death certificate and demand attestation statement establish that any of a number of factors impacting this high risk surgery may have caused her death. The doctrine of res ipsa loquitur "is only to be applied when the nature of the accident itself not only clearly supports the inference of negligence, but excludes all others..." Frank Fehr Brewing Company v. Corley, 265 Ky. 308, 96 S.W.2d 860 (1936). As no other causes of death has been ruled out, res ipsa loquitur cannot be applied to these facts.

Further, Enlow makes an unwarranted leap of faith from the malfunction of the valve, characterized by him as a "defect," to the conclusion that St. Jude failed to adhere to FDA requirements for manufac-

turing, testing or inspection. He urges that "had St. Jude scrupulously adhered to FDA specific requirements," the valve "likely would not have malfunctioned." However, FDA requirements are not guarantees of a satisfactory results in the use of medical devices, as evidenced by the warning of potential risks and complications required to be included in product labeling. That is, the FDA requires disclosure that specific risks exist in the use of medical devices, despite their approval by the FDA.

A *res ipsa loquitur* analysis is ill-suited to this and most product cases involving the use of medical devices. Rarely if ever will a medical procedure present such a pristine situation that all other causes of injury, other than a manufacturing defect, may be ruled out. Additionally, medical devices will be out of the full management and control of the manufacturer and in the control of the medical personnel utilizing them prior to or at the time of the injury. Kentucky courts have not had the occasion to address issue. However, a number of courts in other jurisdictions have found the efforts at the application of the doctrine in such cases to be unsuccessful. See, i.e., *Williams v. American Medical Systems,* 248 Ga.App. 682, 548 S.E.2d 371 (2001)(*res ipsa loquitur* did not apply as medical device was not in the exclusive control of the manufacturer, and other possible causes of injury had not been eliminated.); *Fulton v. Pfizer Hospital Products Group, Inc.,* 872 S.W.2d 908 (Tenn.App.1993)(In order to rely on doctrine of *res ipsa loquitur,* nature and circumstances of accident must be of such character that there could be no reasonable inference but that the injury was due to defendant's negligence); *Gaston v. Hunter,* 121 Ariz. 33, 588 P.2d 326 (1978)(*res ipsa loquitur* not applicable to drug manufacturer who did not have control of drug injected during surgery). While it is conceivable that a plaintiff could find a "trout in the milk" in the evidence surrounding a surgical procedure, this is clearly not such an instance.

For the reasons set forth herein, the motion of the defendant, St. Jude Medical, Inc., for summary judgment will be granted. A separate order will be entered this date in accordance with this opinion.

### ORDER

Motion having been made and for the reasons set forth in the memorandum opinion entered herein this date and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, St. Jude Medical, Inc., for summary judgment is **GRANTED,** and the claim for negligent manufacturing, testing or inspection, or manufacturing defect due to a failure to adhere to FDA approved design and/or manufacturing processes and specifications is **DISMISSED WITH PREJUDICE.**

Accordingly, the First Amended Complaint is **DISMISSED WITH PREJUDICE.** There being no just reason for delay in its entry, this is a final order.